[Civ. No. 6064. First Appellate District, Division Two.—December 5, 1927.]

FREDERICK OLSCHEWSKI, Trustee in Bankruptcy, etc., Appellant, v. W. G. HUDSON, Executor, etc., Respondent.

Joseph E. Bien for Appellant.

Cullinan & Hickey and William T. Sweigert for Respondent.

THOMPSON (R. L.), J., *pro tem.*—This is an appeal from a judgment entered against plaintiff for failure to amend after the sustaining of a demurrer on the ground that the complaint failed to state facts sufficient to constitute a cause of action. The effect of the challenged ruling upon the demurrer was to hold that an action for conversion does not lie for the alleged appropriation and sale by an agent of a laundry route.

. Plaintiff is trustee in bankruptcy of the estate of the Eagle Laundry Company, a bankrupt corporation. Defendant is the executor of the estate of James T. Murphy, deceased. Prior to his death the deceased had been the agent

of said laundry company in charge of route "A" in San Francisco, working for a compensation of thirty-five dollars per week. The complaint alleges that on September 17, 1924, the Eagle Laundry Company was adjudged a bankrupt, and plaintiff was duly appointed and qualified as trustee thereof; that for a period long prior to August 2, 1924, the deceased was employed and acted for said company in charge of route "A" in San Francisco, and as such agent "was given charge and control of numerous customers . . . to collect for and deliver . . . laundry . . . for the purpose of washing, ironing, etc., and . . . to collect the money due for such service. . . . "; that about July 28, 1924, the assignee in bankruptcy of said laundry company negotiated a sale of said laundry route together with seven other routes alleged to have belonged to said Eagle Laundry Company, and thereupon demanded of said agent that he deliver to said purchaser of said route "A" all "memoranda and the list of customers, . . . and all laundry and washing collected. . . . "; that said agent refused to comply with said demand, but, upon the contrary, on August 4, 1924, purported to sell said route "A" to the Crystal Laundry Company of San Francisco, a competitive laundry company, and agreed to "turn over all work and laundry collected upon said route 'A' to said alleged purchaser, the Crystal Laundry Company," in consideration of a certain percentage of the gross business thus arising from said route; that thereafter said agent acted as the "outside driver" for said Crystal Laundry Company; that said acts of appropriation and purported sale of said route "A" on the part of said agent constituted a conversion of said property rights of said bankrupt estate to its damage in the sum of $2,500. Subsequently James T. Murphy died, and upon proceedings duly had the defendant was appointed and qualified as executor of the estate of said deceased, and this action for damages for conversion was thereupon instituted against the estate of said deceased.

Apparently said laundry route consisted of a number of customers of said bankrupt estate who resided in a certain district of San Francisco designated as route "A." It must be assumed that, as an agent and employee in charge of this route for said company, the deceased was possessed

of knowledge of the list of individuals residing in said district who were accustomed to patronize his employer, although it is not affirmatively alleged that he had a list or memorandum of the names of customers, either written or otherwise, or that he had access to any such list. ■ However, as such confidential agent he was bound to exercise utmost good faith in behalf of his employer, and not take advantage of his trade knowledge and information secured in the course of his employment, to use it for his personal benefit. (Civ. Code, secs. 1983–1988.) In the case of *Empire Steam Laundry* v. *Lozier*, 165 Cal. 99, 102 [Ann. Cas. 1914C, 628, 44 L. R. A. (N. S.) 1159, 130 Pac. 1180], it is said: "There can be no question . . . but that defendant's agency was one of trust and confidence. . . . The names of customers of a business concern, whose trade and patronage have been secured by years of business effort and advertising, and the expenditure of time and money, constituting a part of the goodwill of the business which enterprise and foresight have built up, should be deemed just as sacred and entitled to the same protection as a secret of compounding some article of manufacture and commerce."

Manifestly a laundry route does not consist solely of a specific district or territory, nor does it consist of a vested right to or monopoly of the patronage of all the residents of said district. Competing laundry companies may possess independent lists of customers residing in the same house, block, or district. Obviously, a customer of one laundry company to-day, for good and valid reasons, or for no reason whatever, may become the customer of a competing company to-morrow. For friendship, whim, better service, or cheaper prices, a customer may change his laundry at will. ■ No laundry company may have a vested property right to claim as customers, particular individuals, nor all the residents of a specific district. The field is open for fair competition on the part of any and all who desire to solicit patronage. In *New Method Laundry Co.* v. *MacCann*, 174 Cal. 26 [Ann. Cas. 1918C, 1022, 161 Pac. 990], it is said: "To restrain a person lawfully engaged in a laundry business from receiving unlaundered goods from certain former patrons is to sanction, to that extent, the establishment of a trade blacklist, thereby depriving such patrons, without

any fault on their part, of the right to have their laundry work done where they will. The constitutional guaranty of liberty includes the privilege of every citizen to freely select those tradesmen to whom he may desire to extend his patronage, and equity cannot invade or take away this right, either directly or indirectly.'' It is, however, the duty of a laundry route agent to extend uniform courtesy and fair treatment, and take no undue advantage of his trade knowledge, so that he may retain the goodwill and patronage of the individual customers for the benefit of his employer. ▮ A list of laundry customers is a property right which may be appropriately protected, but it is not a tangible right which may be handled and transferred like stocks, bonds, personal effects, household goods or animals. The property right of a laundry route is akin to the goodwill of a business. (*Empire Steam Laundry* v. *Lozier, supra.*) The goodwill of a business is susceptible of ownership. (Civ. Code, sec. 655.) Unlawful interference with property rights in the goodwill of a business, or the benefits of trade and patronage of a specific list of customers in a definite route may be protected by injunctive relief in a court of equity. (14 Cal. Jur. 199, sec. 17; *New Method Laundry Co.* v. *MacCann, supra; Cornish* v. *Dickey,* 172 Cal. 120 [155 Pac. 629]; *Empire Steam Laundry* v. *Lozier, supra; Mackechnie Bread Co.* v. *Huber,* 60 Cal. App. 539 [213 Pac. 285].) But there is nothing definite or tangible in the character of the ordinary list of laundry customers which makes an effort to transfer the district in which they live subject to an action in conversion. No authority has been furnished, which sustains the maintenance of an action in trover or conversion for the unlawful interference with a laundry route, or any similar property right. Clearly the proceeding in conversion was not intended to reach so intangible, uncertain, and indefinite a property right. The very meaning of the word ''conversion,'' as it is used in this sense, is to ''change into another form, substance or state; to transform, or change, as in law, the wrongful appropriation to one's own use of the goods of another.'' (Standard Dictionary.) The very definition of the word presupposes the existence of tangible goods or chattels in a form capable of being changed or transformed, turned over, delivered, or appropriated for the use and benefit of the wrong-

doer. In 38 Cyc. 2011 it is said that conversion lies for "every species of tangible personal property which is the subject of private ownership." In this case conversion is used as a term synonymous with trover. (Black's Law Dictionary, 1174.) Trover comes from a French word meaning to find, and is defined as "a form of action which lies to recover damages against one who has, without right converted to his own use goods or personal chattels, in which the plaintiff has a general or special property. . . . It was originally an action of trespass on the case where goods were found by the defendant and retained against the plaintiff's rightful claim. The manner of retaining possession soon came to be disregarded, as the substantial part of the action is the conversion to the defendant's use; so that the action lies whether the goods came into the defendant's possession by finding or otherwise, if he fails to deliver them upon the rightful claim of the plaintiff. It differs from detinue and replevin in this, that it is brought for damages and not for the specific articles; and from trespass in this, that the injury is not necessarily a forcible one, as trover may be brought in any case where trespass for injury to personal property will lie." (3 Bouvier's Law Dictionary, 3d Rev. 3326.) Various authorities confine the application of the proceeding of trover or conversion to the wrongful interference with specific tangible goods or chattels. "In substance it (trover) is a remedy to recover the value of personal chattels wrongfully converted by another to his own use." (1 Chitty on Pleading, 14th Am. ed., 146.) It is "a generic term applied to those torts, arising from the wrongful conversion of any particular piece of personal property owned by another." (*Spellman* v. *Richmond & D. R. Co.*, 35 S. C. 475 [28 Am. St. Rep. 858, 14 S. E. 947].) "In form it is a fiction, in substance a remedy to recover the value of personal chattels wrongfully converted by another to his own use." (1 Burr. 31.) "Trover lies for specific chattels wrongfully converted, and not for money had and received for payment of debts. It does not operate on chattels generally, but specifically, such as money in coin, or bills, animals or other property capable of identification as being the actual property or thing wrongfully taken or converted." (*Kerwin* v. *Balhatchett*, 147 Ill. App. 561, 566.) And in 26 R. C. L. 1105, it is said: "An action in trover

is not maintainable for the conversion of a bill or note unless the plaintiff can show that he was entitled to the possession of the specific property in question.'' From the foregoing authorities it appears that the action of trover or conversion lies only for the wrongful appropriation of goods, chattels or personal property which is specific enough to be identified, and not to such indefinite, intangible and uncertain property rights as the mere goodwill of a business, or trade secrets (*Roystone* v. *Woodbury*, 67 Misc. Rep. 265 [122 N. Y. Supp. 444]), or a newspaper route (*Boehm* v. *Spreckels*, 183 Cal. 239 [191 Pac. 5]), or a licensed market stall for transacting trade. (*Meier* v. *Wilkens*, 15 App. Div. 97 [44 N. Y. Supp. 274].)

Appellant relies upon the case of *Payne* v. *Elliott*, 54 Cal. 339 [35 Am. Rep. 80], as authority for the contention that conversion lies for the wrongful appropriation of every character of property contained within the classification of personal property. That case in fact does say: ''The fiction on which the action of trover was founded, namely, that a defendant had found the property of another, which was lost, has become, in the progress of the law, an unmeaning thing which has been by most courts discarded; so that the action no longer exists as it did at common law, but has been developed into a remedy for the conversion of every species of personal property.'' This language is also quoted in 24 Cal. Jur. 1030, section 7, which text is supported only by the one authority above mentioned. But this is too broad a statement as to the application of the doctrine of conversion or trover, and it was unnecessary to the determination of the issue in that case. All that was involved in the Payne case, *supra,* was the question as to whether conversion would lie for the unlawful appropriation of shares of stock in a mining company. Shares of stock are represented by certificates which are evidence of a definite interest in the assets of a company. Shares of stock are tangible and may be identified. It is the uniform rule of law that shares of stock in a company are subject to an action in conversion. (26 R. C. L. 1105; 7 R. C. L. 197, sec. 166; *Ralston* v. *Bank of California*, 112 Cal. 208, 213 [44 Pac. 476]; *Jackins* v. *Bacon*, 63 Cal. App. 463, 468 [218 Pac. 1027]; *People* v. *Flanagan*, 60 Cal. 1 [44 Am. Rep. 52].)

■ It is true, as contended by appellant, that personal property consists of "every kind of property that is not real . . . " (Civ. Code, sec. 663.) And section 3336 of the Civil Code provides that "The detriment caused by the wrongful conversion of personal property is presumed to be: (1) The value of the property at the time of the conversion, . . . " But this section does not declare that an action in trover will lie for the conversion of personal property of every character. It merely purports to. fix the measure of damages for the wrongful appropriation of such personal property as is subject to the action of conversion. No statute of California purports to state just what character of personal property is subject to this action.

■ In the case of *Boehm* v. *Spreckels*, 183 Cal. 239 [191 Pac. 5], it is held that a contract between a newspaper publisher and a carrier, for the exclusive control of a newspaper route, created a mere agency, and conveyed no interest in property. The characteristics of this newspaper route were similar to those of the laundry route in the instant case. The deceased, as the agent of the laundry company acquired no title to the property, and having none, his attempt to transfer the route to an alleged purchaser, would convey no title. The title of the Eagle Laundry Company was therefore in nowise affected by this alleged sale. Its former customers of this route were privileged to continue to patronize appellant's business regardless of the attempted sale. The only acts of the deceased of which appellant may complain were the violation of his trust as confidential agent, and the consequent damage to their business on account of a possible loss of customers. Under such circumstances the remedy is not found in an action for conversion, and the demurrer was therefore properly sustained.

The judgment is affirmed.

Sturtevant, J., and Koford, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 2, 1928.

All the Justices concurred.