[Civ. No. 4283.   Third Appellate District.—June 2, 1931.]

C. C. NICHOLS et al., Respondents, v. M. A. LEACH et al., Appellants.

Jacobs & Jacobs for Appellants.

Chambers & Lyman for Respondents.

MR. JUSTICE THOMPSON (R. L.) DELIVERED THE OPINION OF THE COURT.—This is an appeal from a judgment in a suit for unlawful conversion of certain stocks and bonds of the value of $19,000, and for the cancellation of a promissory note which is unlawfully retained by the appellants.

The defendant Jacobs owns and operates a brokerage business at Los Angeles under the fictitious name of U. S. Bond & Mortgage Company. The defendant Leach was the business manager of this enterprise. Thomas T. Snell owned 208 shares of the capital stock of the West Hollywood National Bank, valued at $148,500. The plaintiff Stella N. Nichols, owned stocks and bonds of the aggregate value of $19,000. The appellants promoted a plan to purchase the above-mentioned shares of the capital stock of the West Hollywood National Bank for the purpose of reorganizing and controlling the bank. Pursuant to this plan an agent of

the appellants interviewed the plaintiffs and persuaded them to loan to the appellants their stocks, bonds and credit for a period of about six months in consideration of an agreed profit of $3,200 which was to be paid therefor. An oral agreement was subsequently made, by the terms of which a promissory note of the plaintiffs for $16,000 and the stocks and bonds above mentioned were to be deposited with the appellants to be used by them to aid in the financing of the purchase of 208 shares of the capital stock of the Hollywood Bank. These stocks and bonds and the promissory note were to be returned to the plaintiffs, together with a cash profit for the loan of these collaterals of the sum of $3,200 on or before March 18, 1926. Pursuant to this agreement the plaintiff C. C. Nichols executed and delivered to the appellants his promissory note, dated September 18, 1925, payable to the U. S. Bond & Mortgage Company in six months from its date, with interest at the rate of seven per cent per annum. This note, together with Sutter Basin bonds of the value of $2,000, bonds of the North American Bond & Mortgage Company of the value of $10,000, 56 shares of the American Power & Light Company, preferred, of the value of $2,000, bonds of the Arkansas Light & Power Company of the value of $2,000, Sperry Flour bonds of the value of $2,000 and bonds of the Pine Bluff Company of the value of $1,000, was deposited with the appellants September 18, 1925, with the agreement that these instruments should all be returned to the owners on or before March 18, 1926, with the payment of $3,200 for the use thereof.

The written receipt of the U. S. Bond & Mortgage Company, which was given to the plaintiffs upon acceptance of these instruments corroborates the oral testimony regarding the terms of this transaction. It reads as follows:

"U. S. Bond & Mortgage Company
"718 Washington Building
"Los Angeles, Calif.
"Sept. 18th, 1925.

"Mr. and Mrs. C. C. Nichols,
"1627 Ogden Drive,
"Los Angeles, California.

"Dear Sir and Madam:

"This will acknowledge receipt of your collateral note in the sum of $16,000 secured by the following securities:

$2,000   Sutter Basin Bonds
$10,000  North American Bond & Mortgage Co.
56  Shares American Power & Light—Preferred
$2,000   Arkansas Light & Power Bonds
$2,000   Sperry Flour Bonds
$1,000   Pine Bluff Company Bonds.

"This note is to be cashed and used by E. Milton White, toward the purchase of a minimum of 208 shares out of a total issue of 250 shares at a price of $148,500 for the 208 shares of the capital stock of the West Hollywood National Bank, Hollywood, Los Angeles, California, which controlling interest in said bank is later to be sold so as to permit of paying you a profit of $3,200 *for the use of your collateral note,* and the collateral note together with all securities as listed above and the profit of $3,200 is to be returned to you March 18th, 1926, by us and we hereby agree to do so.

"Yours very truly,
"U. S. BOND AND MORTGAGE COMPANY,
"By B. EDWIN LANG."

The agreement of the appellants regarding the use of the note and collaterals was violated. Without the knowledge or consent of the plaintiffs all of the stocks and bonds, which were held merely as collateral security for the note, were unlawfully sold for the aggregate sum of $17,500, and the proceeds therefrom were used by the appellants to pay their personal obligations. No part of the proceeds of these sales of stock or bonds was paid to the plaintiffs. Upon learning of this misappropriation of the stocks and bonds the plaintiffs demanded the return of the note and collaterals, which the appellants failed to do. This action for conversion was thereupon commenced May 27, 1926, against several individual defendants, including Thomas T. Snell, the owner of the capital stock of the West Hollywood National Bank and the National Holding Corporation. Prior to the trial Mr. Snell died. The action against him was thereupon dismissed. The cause was also dismissed as to the National Holding Corporation. Before the termination of the action, the plaintiff Mrs. Nichols also died. Upon proceedings duly had, her husband, C. C. Nichols, was appointed and qualified as administrator of her estate. Upon motion he was duly substituted as administrator in her place, as one of the plaintiffs in the action.

The court adopted findings to the effect that the appellants Leach and Jacobs were engaged in a brokerage business in Los Angeles under the fictitious name of U. S. Bond & Mortgage Company; that the estate of Mrs. Nichols was the owner of the stocks and bonds above mentioned which were of the reasonable value of $19,000; that C. C. Nichols executed his promissory note for the sum of $16,000, payable to the U. S. Bond & Mortgage Company in six months after its date; that on September 18, 1925, this note, together with the said stocks and bonds as collateral security therefor, was delivered to the appellants Leach and Jacobs, to be used for the purpose of purchasing certain bank stock, and to be returned to the plaintiff on or before March 18, 1926; that in violation of the agreement the appellants unlawfully sold the stocks and bonds and appropriated the proceeds thereof to their own use, and failed to pay any part thereof to plaintiffs; that the note was without consideration and is now retained and claimed by the defendant Jacobs as his property. Thereupon judgment was rendered against the defendants Leach and Jacobs for the sum of $19,000 as the value of the stocks and bonds which were converted by them. It was further held that the note was without consideration and void and the defendants were directed to deliver it to the plaintiff Nichols. From this judgment an appeal was perfected.

The appellants assert that the elements necessary to establish an involuntary trust of the property have been neither alleged nor proved; that the transaction constituted a joint adventure between the plaintiff and the appellants. It is true that the complaint contained certain allegations to the effect that the proceeds of sales of the stocks and bonds constituted a trust in the hands of the appellants. These allegations are, however, surplusage and harmless. The complaint contains adequate allegations constituting a cause of action sounding in trover. (*Baird* v. *Olsheski*, 102 Cal. App. 452 [283 Pac. 321].) The case was evidently tried on this theory. No demurrer was filed to the second amended complaint. The complaint alleges that the plaintiffs were the owners of the stocks, bonds and note, and that these instruments were deposited with the appellants pursuant to an agreement to be used for a specific purpose, to be returned to the owners on March 18, 1926; that the appellants

failed to return the instruments, but upon the contrary unlawfully sold the stocks and bonds and appropriated the proceeds thereof to their own use; that the appellants retained the custody of the note; that the stocks and bonds were valued at $22,500; that the plaintiff demanded a return of these instruments pursuant to agreement, together with the proceeds of sales of the stocks and bonds, with which demand the appellants failed to comply. The complaint then prayed for judgment for damages in the sum of $26,060.

The sale of the stocks and bonds was admitted. The market value of these instruments was stipulated to be the sum of $19,000. The appellant Jacobs admitted that he was holding and claiming title to the promissory note. The court adopted findings in accordance with the foregoing statement of facts, holding that ''the plaintiffs have been damaged in the sum of $19,000, the value of said securities'', and that the $16,000 note ''is null and void and of no effect and should be delivered by the defendant D. A. Jacobs to the plaintiff C. C. Nichols''. Judgment was rendered accordingly.

■ The unlawful appropriation of stocks and bonds deposited as collateral security for the payment of a note constitutes conversion for which the owner may maintain an action in trover for damages for the market value thereof. (*Meyers* v. *Lasker*, 110 Cal. App. 538 [294 Pac. 80].) ■ A bailee who fails, without reasonable excuse, to return personal property to the owner when the bailment is terminated and upon demand is liable for damages for the unlawful conversion of the property. (*Wolf* v. *Willard H. George, Inc.*, 110 Cal. App. 436 [294 Pac. 436].) ■ Shares of stock and bonds constitute such tangible property as is subject to an action of conversion. (24 Cal. Jur. 1030, sec. 7; *Payne* v. *Elliott*, 54 Cal. 339 [35 Am. Rep. 80]; *Olschewski* v. *Hudson*, 87 Cal. App. 282, 288 [262 Pac. 43].) ■ Under section 3336 of the Civil Code, the measure of damages for the conversion of personal property is the value of the property at the time of the appropriation thereof.

■ The consideration for the note failed. That instrument became *functus officio* and void. The court properly canceled it and directed that it be returned to the maker.

■ While there is a conflict of evidence regarding the nature and purpose of the transaction the pleadings, find-

ings and judgment are amply supported by evidence of an unlawful conversion.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 2, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 30, 1931.