**J. H. WHITELEY and Wayne Whiteley, Appellants,**

v.

**FOREMOST DAIRIES, Inc., and Guy Hornor, Appellees.**

**No. 15838.**

United States Court of Appeals Eighth Circuit.
April 16, 1958.

James R. Hale, Fayetteville, Ark. (Rex W. Perkins, Fayetteville, Ark., was with him on the brief), for appellants.

Leonard Greenhaw, Fayetteville, Ark., and A. L. Barber, Little Rock, Ark. (Barber, Henry, Thurman & McCaskill, Little Rock, Ark., and Greenhaw & Greenhaw, Fayetteville, Ark., were with them on the brief), for appellees Foremost Dairies, Inc., and Guy Hornor.

Before SANBORN, WOODROUGH and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

This is an action for damages for the alleged conversion of a milk route. Diversity of citizenship and more than the statutory amount make for federal court jurisdiction. The case was tried to the court without a jury and resulted in a judgment of dismissal of the complaint. The trial court's opinion, together with findings of fact and conclusions of law, upon which judgment was based, are reported in Whiteley v. Foremost Dairies, Inc., D.C.W.D.Ark.1957, 151 F.Supp. 914.

Appellants' complaint alleged that the appellees and one Keith Skelton, who originally appeared as one of the defendants but who was dismissed from the action on appellants' own motion in the trial court, wrongfully converted appellants' milk route to their own use and that appellants were thereby damaged to the extent of $7,500.00. The complaint also charged a violation of the Sherman and Clayton Anti-Trust Acts, 15 U.S.C.A. §§ 1, 2, 12 and 15, but such charges were abandoned on appeal here and need not be further referred to.

The answer of the appellees Foremost Dairies and Hornor denied that they converted the milk route and alleged that on November 1, 1954, the appellants and the appellees entered into a verbal contract to the effect that in consideration of the Foremost Dairies, Inc., paying to the appellants 40 cents per cwt. for hauling milk, the appellants would furnish a properly equipped truck, pick up the milk, which Foremost was to buy, that Foremost was to pay the driver of the truck and also the premium on insurance carried and deduct the expense thereof from such payments as appellants were entitled to receive for milk transportation. The answer further alleges that the appellants breached the terms of the oral contract with the appellees through negligence and carelessness and unsanitary handling of the milk and that as a

result of said breach the contract was terminated by the Foremost Dairies on the 9th day of January, 1956.

Inasmuch as the record on appeal does not include any of the evidence adduced at the trial, the findings of the trial court may not be controverted here. Accordingly, the only question involved in this appeal is whether the findings of the trial court support the judgment of dismissal.

The milk route here in question, and which was designated as "Milk Route No. 800", was established in Washington County, Arkansas, in 1951. The first operator thereof was one Ross Reed, who sold whatever rights he had to Lloyd Sloan and O. J. Snyder. On November 1, 1954, Sloan and Snyder entered into an agreement with the appellants herein whereby, for a consideration of $6,000.00, they did " * * * sell and Transfer their ownership of Milk Route #800 with 1953 G.M.C. Truck, * * * " to the appellants and they did " * * * agree not to pick up any milk in the territory that is served by them, in what is called the Lincoln route or #800 Route." The $6,000.00 paid for the truck and route was considerably in excess of the value of the truck. The trial court found, 151 F.Supp. 914, 920:

"Such milk routes are often bought and sold in Northwest Arkansas, and it is quite common for a buyer to pay more than the value of the equipment, the excess payment being for the good will and agreement of the seller not to pick up any milk produced on the route."

After making their purchase from Sloan and Snyder, appellants operated the milk route delivering the collected milk to the appellees in the customary manner. All such milk was intended for sale as Grade A milk in the Dallas, Texas, market. Consequently, the milk producers on Route No. 800 and appellants, as well as appellee dairy, were required to meet sanitary standards set by the Dallas Health Department. The trial court found, 151 F.Supp. 914, 921:

"Plaintiffs (appellants), through their employees, began operating the milk route on November 2, 1954, and continued to operate it until January 10, 1956. During that time their service became progressively worse, and they received many complaints from producers. A few of the producers even made trips to the home of the plaintiff, Wayne Whiteley, in Westville, Oklahoma, to discuss various complaints. Among other things the producers complained that plaintiffs spilled substantial amounts of milk; failed to return weight tickets in order that the producers would have a record of the milk sold by them; lost the producers' milk cans; mixed up the milk cans and lids of different producers; returned the cans in a dirty condition; picked up the milk at irregular hours, thus making it difficult to keep the milk at proper temperatures; allowed the trucks to become dirty; failed to put the empty cans in proper racks; and were generally negligent and unsanitary."

The court found that as a result of such improper handling, a substantial majority of the producers complained to the appellees, to Health Inspector Leach and others. A number of the producers attempted to get Keith Skelton, who operated a milk route near this one, to haul their milk. Skelton at first refused. The trial court found that thereafter, 151 F.Supp. 914, 921:

"Around the last of December, 1955, or first of January, 1956, the inspector, Leach, after having failed in previous attempts to get plaintiffs (appellants) to comply with all pertinent regulations, informed the defendant (appellee) Horner that he was going to suspend plaintiffs' permit. As a result of this information from Leach and the various requests from producers, Horner arranged with Keith Skelton or Skelton Brothers, Inc., to have said Skelton begin

picking up milk on the route in question on Tuesday, January 10, 1956."

Appellants were advised by appellee Hornor that thereafter Skelton would operate the route and that Foremost would no longer buy any milk delivered by appellants. Skelton began operating the milk route on January 10, 1956. Appellants thereafter made no further attempt to pick up milk on this route. The trial court stated, 151 F.Supp. 914, 923:

"In the instant case it must first be determined whether plaintiffs (appellants) owned property which was the subject of conversion. When plaintiffs purchased the milk route from Sloan and Snyder, they acquired three things: (1) the equipment, (2) the promise of Sloan and Snyder not to pick up any milk on the route, and (3) the good will, if any, that Sloan and Snyder had established with the producers."

The trial court found that, 151 F.Supp. 914, 924:

"* * * plaintiffs (appellants) owned nothing which was the subject of conversion except their equipment and, of course, the equipment was not touched by defendants (appellees)."

In so holding, the trial court stated, 151 F.Supp. 914, 924:

"* * * the only possible thing plaintiffs (appellants) owned, other than the equipment and promise of Sloan and Snyder, was the good will, if any, established with the producers. There is a serious question whether good will is an item that could be the subject of conversion. * * * But assuming that good will is something that could be converted, in the instant case defendants (appellees) took no action designed to interfere with plaintiffs' good will. (As a matter of fact, plaintiffs by their mishandling of the route had destroyed any good will that had existed when they first began operating the route.) All the defendants did was to secure Skel-

ton Brothers, Inc., through Keith Skelton to operate a truck on the route. There was nothing to prevent plaintiffs from operating a truck on the same route if the producers agreed and another market was secured. In other words, after Skelton Brothers, Inc., began operating on the route plaintiffs still had their equipment, still had their promise from Sloan and Snyder, and still had the right to haul milk for any of the producers who were willing for them to do so to any company which might want to purchase the milk." Citing Olschewski v. Hudson, 87 Cal.App. 282, 262 P. 43, 44.

We think the trial court's conclusion that the appellees did not convert any property owned by the appellants and did not invade or interfere with any property or property rights of the appellants is amply supported by the now indisputable findings. We hold the judgment of dismissal to be fully sustained.

It might be pointed out here that the answer of the appellees admits that there was an agreement or understanding existing between the appellants and the appellees to the effect that the appellants would operate the milk route in question and that the appellees would buy the milk hauled therefrom. Apparently such agreement was terminable at will (see E. I. Du Pont de Nemours & Co. v. Claiborne-Reno Co., 8 Cir., 1933, 64 F.2d 224, 228–229, 89 A.L.R. 238), but even if the contrary could be established and the appellants' claim be considered as one for damages for breach of contract to buy milk, there still could be no recovery. It is perfectly obvious from the findings of the trial court that the appellants were guilty of such negligence and carelessness in the handling of the milk and in their failure to use acceptable standards of efficiency and sanitation as would constitute a breach on their part. Such breach on the part of the appellants fully justified the appellees' notice that they would no longer buy milk delivered by the appellants and justified them in assisting in getting someone else to haul

milk from the dissatisfied producers. It was only after appellants had so mismanaged the route and had destroyed what good will had theretofore existed that the appellees agreed to buy milk from another person if he would operate on the route. The trial court stated, 151 F.Supp. 914, 925, "Plaintiffs' (appellants') own mismanagement of the route was the sole proximate cause of any loss sustained by them, * * *." We are in entire accord.

Affirmed.