[Crim. No. 322.    Fourth Appellate District.—November 15, 1935.]

In the Matter of the Application of E. B. HARTMAN for a Writ of Habeas Corpus.

Ralph W. Eckhardt for Petitioner.

Stanley Mussell, District Attorney, and James L. King, Deputy District Attorney, for Respondent.

BARNARD, P. J.—The petitioner alleges that he was charged, in separate counts of a criminal complaint filed in the justice's court of San Bernardino township, with the unlawful possession of a hypodermic syringe and needle in violation of section 8 (e) of the Poison Act (Deering's Gen. Laws, Act 5994), with a violation of the state Chiropractic Act (Deering's Gen. Laws, Act 4811) by unlawfully applying to himself the term ''Physician'', and with a violation of the Medical Practice Act (Deering's Gen. Laws, Act 4807) by practicing medicine without a license; that he was tried upon a written stipulation of facts and found guilty on all three counts; that a fine was imposed on each count with the alternative of a jail sentence; that he appealed to the Superior Court of San Bernardino County, which court affirmed the judgment and sentence as to each count; and that the sheriff has taken him into

custody on account of his refusal to pay any of said fines or any part thereof.

The petition purports to set forth the stipulation of facts referred to. Among other things, it was stipulated that the petitioner was a licensed chiropractor under the Chiropractic Act; that he was not a licensed physician and surgeon under the Medical Practice Act; that he was possessed of the degree of Naturopathic Doctor (N. D.) issued by a Chiropractic college but that he held no certificate to practice as a naturopathic physician in California; that he knowingly had in his possession a hypodermic syringe and hypodermic needle when he was not a physician, dentist, registered nurse, veterinary or pharmacist licensed to practice in this state; that said instruments had not been purchased by him through or with an order signed by a licensed physician, dentist, veterinarian or a person licensed to practice osteopathy; that he knowingly practiced and advertised himself as practicing a system or mode of treating the sick within this state in that he diagnosed and treated the disease of cancer according to the "Koch" method, by injection of a fluid called an "antitoxin" or split-protein; that this method of treating cancer is taught in chiropractic schools and colleges in this state; that the use of a hypodermic syringe and hypodermic needles is taught in chiropractic schools and colleges in this state in connection with the subjects of bacteriology, obstetrics and gynecology; that the method of healing and treating the sick known as "Naturopathy" is taught in chiropractic schools and colleges in this state, and that the words "Naturopathic Physician" mean one who has taken the prescribed course and who has the degree of Naturopathic Doctor or N. D.; that two licensed physicians and surgeons, who are named, would qualify as experts in medicine and surgery and would testify that in their opinion the use of a hypodermic syringe, a hypodermic needle and antitoxin is a part of the practice of medicine and surgery; and that a named licensed chiropractor would qualify as an expert and testify that in his opinion the use of a hypodermic needle and syringe and an antitoxin is not the practice of chiropractic.

The petitioner relies on section 7 of the Chiropractic Act, which provides that a license to practice chiropractic shall authorize the holder thereof "to practice chiropractic in the state of California as taught in chiropractic schools or col-

leges; and, also, to use all necessary mechanical, and hygienic and sanitary measures incident to the care of the body, but shall not authorize the practice of medicine, surgery, osteopathy, dentistry or optometry, nor the use of any drug or medicine now or hereafter included in materia medica''. His position is that since the use of a hypodermic syringe and needle, the diagnosing and treatment of cancer by the use of an injection of antitoxin and the treatment of the sick by naturopathy are all taught in chiropractic schools in California, he was lawfully entitled to possess a hypodermic syringe and needle, to call himself a naturopathic physician and to diagnose and treat cancer by injecting an antitoxin.

In the second count of the complaint the petitioner was charged with wilfully and unlawfully using the term ''Physician'' and unlawfully representing and advertising himself to be a physician. The only point raised by the petitioner with reference to this charge is that the evidence, as stipulated to at the trial, is not sufficient to sustain a conviction thereon. The stipulation of facts as set forth in the petition states that the petitioner had in his possession printed letterheads, a copy of which is stated to be attached thereto and marked ''Exhibit A'' and that he also had in his possession printed cards which were in a place accessible to the general public and two of which were attached to the front door of his office where they could be readily seen by anyone entering the office, and a copy of which is stated to be attached thereto and marked ''Exhibit C''. Reference is also made to a letter written by the petitioner on one of these letterheads, which is said to be attached thereto and marked ''Exhibit B''. These three exhibits, thus referred to, which were before the trial court and the superior court on appeal, are not included in the stipulation set forth in the petition and are not brought before us in any manner.

The rule is well established that the sufficiency of the evidence may not be reviewed in such a proceeding as this. The petitioner cites two cases in support of his contention that the evidence may be here reviewed, both of which involve charges of contempt of court. Such cases are distinguished and the reasons for certain exceptions to the general rule are pointed out in the case of *In re Cutler*, 1 Cal. App. (2d) 273 [36 Pac. (2d) 441]. A further consideration is that the failure of the petitioner to include all of the evidence in the

record here makes it impossible for us to pass upon the sufficiency thereof, as requested by him.

A somewhat similar situation appears with reference to the charges set forth in the other two counts. ▇ The first of these relates to the possession of certain hypodermic instruments and the second to the use of these instruments in injecting an antitoxin in the treatment of cancer. It is argued that the petitioner was authorized to possess and make such use of these instruments by the above-quoted portion of section 7 of the Chiropractic Act, since the use of such instruments is taught in chiropractic schools or colleges and also because it is merely a measure incident to the care of the body.

We think this cannot be held to be merely a measure incident to the care of the body within the meaning of that section both because that clause of the section refers to general hygienic and sanitary measures, even though mechanical, and not to the treatment of diseases and ailments, and because the section contains the further limitation that the authorization granted shall not extend to the practice of medicine or surgery. If the possession and use of such instruments is authorized by this section it is only because the license provided for authorizes such methods of treatment as a part of the practice of chiropractic. While the section contains the additional clause "as taught in Chiropractic schools or colleges", the entire section must be taken as a whole and it cannot be taken as authorizing a license to do anything and everything that might be taught in such a school. A short course in surgery or one in law might be given, incidentally, and it would not follow that the section would then authorize a licensed chiropractor to engage in such other professions. It is not sufficient that a particular practice is taught in such a school. Under the terms of the statute it must meet the further test that it is a part of chiropractic, whatever that philosophy or method may be, and further that it shall not violate the provision which expressly forbids the practice of medicine. If such a practice is not a part of chiropractic but does constitute the practice of medicine, it is not authorized under this license even though it may be taught in such a school.

▇ It cannot be told, aside from the evidence, whether the method of treatment here in question is or is not a part of the practice of chiropractic. What constitutes chiropractic and what is included in such a practice is not defined in this act

and could only be determined by the taking of evidence. As the court said in *Evans* v. *McGranaghan,* 4 Cal. App. (2d) 202 [41 Pac. (2d) 937] : ''The intent of the statute is clear upon its face: That the license shall authorize the holder to practice chiropractic as taught in chiropractic schools or colleges. But the court has no way to determine the scope of chiropractic as taught in such schools and colleges in the absence of evidence on that subject, and hence a resort to such evidence would be proper.'' Even if we could properly review the evidence in this proceeding there is no evidence in the record before us which would support a finding that the use of a hypodermic needle or the injection of an antitoxin is a part of chiropractic or included in whatever is covered by that word, and no evidence to the effect that such forms of treatment do not constitute the practice of medicine. On the other hand, the only evidence in the record is to the effect that two physicians, as expert witnesses, would testify that in their opinion these things constitute the practice of medicine and surgery and that a licensed chiropractor as an expert witness would testify that in his opinion the methods in question would not constitute a part of the practice of chiropractic.

In so far as appears from anything before us in this proceeding the petitioner is not entitled to be released from custody.

The writ is discharged and the petitioner is remanded.

Marks, J., and Jennings, J., concurred.