[Crim. No. 1568. Fourth Dist. June 21, 1961.]

THE PEOPLE, Appellant, v. JAMES AUGUSTO et al.,
Respondents.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Herbert Davis, Deputy Attorney General, for Appellant.

Goodman & Jones and Jack C. Goodman for Respondents.

SHEPARD, J.—This is an appeal by the People from an order granting a motion by defendants under Penal Code, section 995, to set aside an information charging defendants with conspiracy to violate Business and Professions Code, section 2141.

## FACTS

The facts as shown by the record before us are substantially as follows: Defendant Lockwood held a license to practice chiropractic, under section 7 of the Chiropractic Act (codified in West's Anno. Cal. Code as Bus. & Prof. Code, §§ 1000-1007). Defendant Augusto held no license of any kind under either the Chiropractic Act or the State Medical Practice Act (Bus. & Prof. Code, ch. 5).

Defendant Augusto engaged in the treatment of persons afflicted with arthritis and other ailments. His system or mode of purported treatment consisted of packing or placing bits of broken-up uranium ore in close physical proximity about various parts of the body of the patient. Defendant Lockwood collaborated with Augusto by recommending Augusto's treatment; by sending patients to Augusto; by making certain physical examinations of patients at Lockwood's own office in purported preparation for such treatments; by allowing his name to be displayed at Augusto's place of business; and by designating Augusto's place of business as a branch office of Lockwood's. From the evidence it is clearly inferable that Lockwood knew that Augusto had no license, and that Lockwood received part of the fees paid to Augusto by such patients. Lockwood did not personally supervise the giving of the treatments.

## CONSPIRACY

Business and Professions Code, section 2141, provides as follows: "Any person, who practices or attempts to practice, or who advertises or holds himself out as practicing, any system or mode of treating the sick or afflicted in this State, or who diagnoses, treats, operates for, or prescribes for any ailment, blemish, deformity, disease, disfigurement, disorder, injury, or other mental or physical condition of any person, without having at the time of so doing a valid, unrevoked certificate as provided in this chapter, is guilty of a misdemeanor."

Penal Code, section 182, provides, *inter alia,* for the punishment of any two or more persons who conspire to commit any crime. ■ As was said in *People* v. *Theodore,* 121 Cal.App.2d 17, 23 [2] [262 P.2d 630]: "The gist of the offense of conspiracy is the formation of a combination with others to do some unlawful act or some lawful act by unlawful means." See also *People* v. *Sorrentino,* 146 Cal.App.2d 149, 153 [2] [303 P.2d 859].

■ Conspiracy may be established by circumstantial evidence, including evidence of the acts of defendants in consummating their common purpose in violation of the statute. (*People* v. *Stanley,* 162 Cal.App.2d 416, 419 [1] [327 P.2d 973]; *People* v. *Cuda,* 178 Cal.App.2d 397, 411-412 [10, 11] [3 Cal.Rptr. 86].) ■ The information is sufficient if it gives notice of the offense of which defendant is accused. ■ The details of the offense are given to defendant through the transcript of the testimony taken before the committing magistrate at the preliminary examination, or by the grand jury on indictment. (*People* v. *Roberts,* 40 Cal.2d 483, 486 [2, 3] [254 P.2d 501].) ■ Conspiracy is a separate and distinct offense from the crime which is the substantive object of the conspiracy. (*People* v. *Travis,* 171 Cal.App.2d 842, 844 [3] [341 P.2d 851]; *People* v. *Sherman,* 127 Cal.App.2d 230, 233 [1] [273 P.2d 611].)

Defendants are not here charged directly with a violation of Business and Professions Code, section 2141, but rather are charged with a criminal conspiracy under Penal Code, section 182, with ten overt acts. There is no contention here that Augusto had any license whatever in any way cogent to the issues at bar. If Augusto wilfully practiced or attempted to practice or advertised or held himself out as practicing any system or mode of treating the sick or afflicted in this State, or diagnosed, treated, operated for or prescribed for

any ailment, blemish, deformity, disease, disfigurement, disorder, injury or other mental or physical condition of any person, he would, as an unlicensed person, be guilty of violation of Business and Professions Code, section 2141. If Augusto and Lockwood wilfully and knowingly agreed to cause such a violation to take place and committed overt acts in furtherance thereof, the crime of conspiracy would be complete, even though Lockwood in his own right and by himself alone could have performed the act which Augusto was forbidden to do. (15 C.J.S. 1073, 1105 [§§ 47b, 73b]; *Curtis* v. *United States,* 67 F.2d 943, 946-947 [7-9].) This is the precise situation which was presented in *People* v. *Nunn,* 65 Cal.App.2d 188 [150 P.2d 476], wherein a licensed osteopathic physician and surgeon, by agreement, collaborated with the doing of acts by a chiropractor for which the chiropractor was not licensed. Thus, for the purpose of this appeal, it would make little difference whether Lockwood could by himself alone have lawfully administered the treatment referred to.

### Chiropractor May Not Practice Medicine

 Defendants appear to contend that a chiropractor who practices medicine may be prosecuted only under the Chiropractic Act. With this we cannot agree. The Chiropractic Act is not a part of the State Medical Practice Act, is not contained within chapter 5 of division 2 of the Business and Professions Code, and is not in conflict with the provisions of section 17 of the State Medical Practice Act (Bus. & Prof. Code, § 2141). It occupies its own sphere of action. (*People* v. *Machado,* 99 Cal.App. 702, 705, 706 [1] [279 P. 228].) The Chiropractic Act merely creates a limited exception to the provisions of Business and Professions Code, section 2141. While the possession of a chiropractor's license would be a full defense to a charge of violation of section 2141 while the chiropractor was acting within the bounds and scope of his license, the term "chiropractic" includes only the meaning of that term as it was generally understood in 1922 when the Chiropractic Act was adopted. Since the words of the statute must be understood according to the sense in which they were used at the time the statute was enacted, the meaning of the term is correctly stated to be: "A system of therapeutic treatment for various diseases, through the adjusting of articulations of the human body, particularly those of the spine, with the object of relieving pressure or tension upon nerve filaments. The operations are performed with the hands,

no drugs being administered." (*People* v. *Fowler*, 32 Cal. App.2d Supp. 737, 746 [84 P.2d 326].) See also *In re Hartman*, 10 Cal.App.2d 213, 217 [2] [51 P.2d 1104]; *People* v. *Mangiagli*, 97 Cal.App.2d Supp. 935, 938 [1] [218 P.2d 1025]; *Quail* v. *Industrial Acc. Com.*, 138 Cal.App. 412, 417 [32 P.2d 402].

A conspiracy to violate the provisions of the State Medical Practice Act, including Business and Professions Code, section 2141, is within the purview of section 182 of the Penal Code. (*People* v. *Nunn, supra*, 191 [1] [65 Cal.App.2d].) *Cooper* v. *State Board of Medical Examiners*, 35 Cal.2d 242, 248 [4] [217 P.2d 630, 18 A.L.R.2d 593], cited by defendants, can be of no assistance to them. The comments of our Supreme Court therein that sections 2141 and 2142 do not apply to those who hold a valid, unrevoked certificate under chapter 5, would inferentially be contrary to instead of in support of defendants' contention because neither Augusto nor Lockwood held any license under Business and Professions Code, chapter 5 (State Medical Practice Act).

### The Court's Duty Under Penal Code, Section 995

The matters under particular consideration by the trial court on a motion to set aside the information under Penal Code, section 995, are well set forth in *People* v. *Platt*, 124 Cal.App.2d 123, 131 [2-6] [268 P.2d 529], as follows:

" 'Reasonable or probable cause,' required to uphold the commitment of a defendant (Pen. Code, § 995), exists if there is sufficient proof to make it reasonable to believe that the defendant is guilty of the offense charged. [Citations.]

"On a motion to set aside an information, the question of the guilt or innocence of the defendant is not before the court, nor does the issue concern the quantum of evidence necessary to sustain a judgment of conviction. The court is only to determine whether the magistrate, acting as a man of ordinary caution or prudence, could conscientiously entertain a reasonable suspicion that a public offense had been committed in which the defendant had participated. [Citation.] A court may not substitute its judgment as to the weight of the evidence for that of the magistrate. If there is some evidence to support the information, the courts will not inquire into its sufficiency. Under section 995 of the Penal Code, the information will be set aside only where there is no evidence that a crime has been committed or there is no evidence to connect the defendant with a crime

shown to have been committed.'' See also *People* v. *Bouchard,* 161 Cal.App.2d 302, 306 [8] [326 P.2d 646]; *People* v. *Davis,* 175 Cal.App.2d 365, 367 [3] [346 P.2d 248]; *Weber* v. *Superior Court,* 35 Cal.2d 68 [216 P.2d 871].

As the term is used in said section 995, '' 'Reasonable or probable cause' means such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. 'Reasonable and probable cause' may exist although there may be some room for doubt.'' (*Lorenson* v. *Superior Court,* 35 Cal.2d 49, 57 [216 P.2d 859].)

Viewing the facts in the light of the language of said section 2141 and the principles of law above set forth, it is apparent that there were ample facts upon which the committing magistrate was justified in finding that reasonable or probable cause existed. Defendants held themselves out as providing a system or mode of treating persons suffering from physical ailments. Defendant Lockwood held a preliminary examination preparatory to sending the patient to Augusto for treatment. He took her blood pressure, examined her heart with a stethoscope, futilely attempted to secure a blood sample by puncturing her arm with a needle, directed her to return for another blood test and X-ray and a urine analysis. He told the patient that the uranium treatments were beneficial and that she should immediately start taking the first of thirty treatments. Defendant Augusto claimed to the patient that the uranium treatments gave extremely good cures for arthritis and other ailments, and did purport to treat her by placing broken uranium ore in canvas containers around and over her body. The evidence is ample to show that this was done by Augusto with the knowledge, approval, affirmative agreement and connivance of defendant Lockwood.

Any claim that these treatments were experimental does not except them from the operation of section 2141. It should be further noticed that no such representation was made, in any event, to the patient. The mere fact that Lockwood made some inquiry relative to the possible legality of himself personally giving the treatments spoken of does not of itself vitiate the conclusion reached by the committing magistrate. Defendant Lockwood offered no evidence, and the record does not show whether or not Lockwood ever received any advice at all from anyone or even whether he actually sought it from a competent source.

The evidence was clearly sufficient to justify the committing magistrate in finding that defendants did wilfully and unlawfully conspire between themselves to violate the provisions of section 2141 of the Business and Professions Code.

The order setting aside the information is reversed.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied July 19, 1961, and respondents' petition for a hearing by the Supreme Court was denied August 16, 1961.