[Crim. No. 4181. First Dist., Div. Three. Mar. 29, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPH E. DOLBEER, Defendant and Appellant.

James W. Harvey and Dorothy E. Handy for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny and Keith E. Pugh, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

DEVINE, J.—Appellant, Dolbeer, appeals from a juagment of conviction in which he and Joseph Lucia (who is not a party to this appeal) were found guilty of conspiracy. The accusation was by indictment, jury was waived, and no defense witnesses were produced. The indictment charged defendants with conspiracy to violate the following provisions of the Penal Code: section 496 (receiving stolen property), section 487 (grand theft), section 488 (petty theft),

and section 504 (fraudulent appropriation by officers or servants of public or private corporations). The court found defendants Lucia and Dolbeer guilty of conspiracy and placed Dolbeer on probation for five years, with a one-year suspended sentence in the county jail.

Pacific Telephone and Telegraph Company has an elaborate system for guarding the secrecy of lists of new subscribers, which it commenced a few years ago in order to prevent annoyances of the subscribers by solicitors. Every evening a printing company prints and disseminates to the telephone exchanges a new list, which is destroyed at the end of 24 hours. In January 1961, Lucia approached an employee of the printing company, proposing that she provide him with the lists, and she agreed, but only after she had reported the matter privately to her employer. The telephone company, the police and the printing company were made aware of the plan and engaged in extensive surveillance. On 10 occasions the employee delivered lists, during her lunch hour, to Lucia, who caused them to be reproduced by a Thermofax machine and returned them at the expiration of the employee's luncheon period so that they could be replaced with the printing company. He paid the employee $600, of which $250 was in cash and was turned over to the district attorney. Dolbeer's connection with the enterprise was established by circumstantial evidence which need not be related herein. Dolbeer did not testify.

 Appellant contends that no crime was committed, because (1) the lists do not constitute "property" within the meaning of the statutes relating to theft or receiving of stolen property, either (a) because they are not property at all, or (b) because they are matters of public information and have no market value; and (2) even if they may be considered property, there is no evidence of conspiracy to steal, embezzle or receive them as stolen property, because (a) considering the substantive crime as larceny-theft, there is no evidence of permanent deprivation, and (b) considering it as embezzlement-theft, there was no intention on the part of the employee to steal, and defendant was not in a fiduciary relationship to the party from whom the property was taken.

*Whether the Lists of Telephone Subscribers Are "Property"*
*Which Is Subject to Theft, Embezzlement or Receiving*

We hold that the lists do constitute property. They are not, as appellant contends them to be, mere information; they

are papers on which information is contained. As papers they are physical goods and come within the definition of personal property contained in Penal Code section 7, subdivision 12, which includes "goods." It is true that their value as pieces of paper would be very little, but this would be so in the case of a rare stamp, or of a letter signed by a great public figure, now deceased, or of any similar item of value. In this case, the value is created by the effort and efficiency of the compilers and by the element of secrecy, but this is merely superimposed on the tangible thing, the paper itself.

In this respect, the case differs from that of *Olschewski* v. *Hudson*, 87 Cal.App. 282 [262 P. 43], upon which much reliance is placed by appellant. In that case, it was held that a laundry route is not subject to conversion, but it had not been alleged in the complaint that the former employee had a list or memorandum of the names of customers, either written or otherwise, or that he had access to any such list. In *Palm Springs etc. Co.* v. *Kieberk Corp.*, 46 Cal.App.2d 234 [115 P.2d 548], conversion was held to lie where defendants appropriated and destroyed tangible personal property consisting of a cabinet of lead cards containing the names and valuable information regarding prospective and actual purchasers of real property, and the court, explaining that the case differed from *Olschewski,* made the distinction between intangibles and tangibles. It may be that, had the operation in our case been merely the copying, transcribing or photographing of the lists, without any asportation, prosecution would not lie, because nothing tangible had been purloined, for stealing of telephone information only has not been made a specific crime, as has stealing of title company data, irrespective of asportation (Pen. Code, § 496c). Here, there was not merely a taking of information such as might have been heard or seen, but an asportation of tangibles.

 It is argued by appellant that whatever was taken was of no market value, because the lists were destined to become public property and were virtually required to be released under section 451 of the Public Utilities Code, which requires, among other things, that every public utility furnish such instrumentalities as are necessary to promote the convenience of patrons, employees and the public. It was for the telephone company, however, whether acting with specific direction of the Public Utilities Commission or not, to direct when and how the names of subscribers should be released, and not for appellant to do so by filching and for a price.

The lists do have a value, as evidenced by the payments made, even though they are not sold by the company. This value, so far as the telephone company is concerned, is in the good will it gains or preserves by protecting its customers from annoyance. It cannot be imagined that the company would go to considerable effort and expense if a valuable asset were not thereby created. It is our conclusion that the lists were property and had a value.

*Whether There Was Conspiracy to Commit Theft or Receiving of Stolen Property*

We conclude that conviction of conspiracy to commit theft or the receiving of stolen property is sustained. We discuss, first, the crimes which may have been the object of conspiracy, and then conspiracy itself. We need not linger over the argument that the species of theft which was formerly designated larceny could not have been the object of conspiracy on the proposition that the essence of the scheme was the return of the lists, and that, because no permanent deprivation of ownership or possession was intended, the *animus furandi* was lacking, because we believe the substantive crime involved was that species of theft known as embezzlement.

■ It is immaterial which of several forms of theft may constitute the basis of conviction if judgment can be sustained upon evidence of any form of the offense. (*People* v. *Martin*, 153 Cal.App.2d 275, 284 [314 P.2d 493].) ■ Of course, embezzlement itself was not committed in this case because from the beginning the employee was faithful to her employer, but it must be considered briefly whether the crime of embezzlement was legally possible for the purpose of later discussion of the offense of conspiracy. ■ It appears that all of the elements of the offense of embezzlement were sufficiently present to make that crime legally possible. There was valuable property, as decided above; there was a fiduciary relationship between the printing company and its employee; the employee had received the property in the course of her employment; and although her appropriation of the property to a use not within the purpose of the trust was not actually for the purpose of defrauding the employer or the telephone company, this was an accidental thing so far as the defendant was concerned. It was legally possible for the crime to have been committed, and it would have been committed had the employee chosen to violate her trust, as defendant expected her to do. The absence of a factual ingredient necessary to success of the plan, the anticipated dishonesty of the em-

ployee, does not destroy the legal possibility of the crime. (*People* v. *Rojas,* 55 Cal.2d 252 [10 Cal.Rptr. 465, 358 P.2d 921]; *People* v. *Camodeca,* 52 Cal.2d 142 [338 P.2d 903]; *People* v. *Meyers,* 213 Cal.App.2d 518 [28 Cal.Rptr. 753]; *Faustina* v. *Superior Court,* 174 Cal.App.2d 830 [345 P.2d 543].)

Although it was of the essence of the plan that the lists were to be returned promptly, this fact would not affect the commission of that species of theft known as embezzlement. (Pen. Code, § 512; *People* v. *McClain,* 140 Cal.App.2d 899 [295 P.2d 952]; *People* v. *Braiker,* 61 Cal.App.2d 406 [143 P.2d 89].) It is, of course, essential that the appropriation have been with intent to defraud (*People* v. *Talbot,* 220 Cal. 3, 15 [28 P.2d 1057]), but this element was supplied by the scheme to take the information which the telephone company and the printing company had an interest in protecting.

We turn now to the subject of conspiracy. The gist of the offense of conspiracy is the formation of a combination with others to do some unlawful act or some lawful act by unlawful means. (*People* v. *Augusto,* 193 Cal.App.2d 253, 256 [14 Cal.Rptr. 284].) It is a distinct and separate offense from the crime which is the substantive object of the conspiracy. (*People* v. *Augusto, supra,* p. 256.) Since conspiracy consists of an agreement to commit a crime, it need not go so far as aiding and abetting, which require participation in the act constituting the offense. (*People* v. *Malotte,* 46 Cal.2d 59, 65-66 [292 P.2d 517].) Nor need the overt act required by the law as evidence of the conspiracy amount to an attempt to commit the offense. (*People* v. *George,* 74 Cal.App. 440, 456 [241 P. 97].)

The fundamental principles of conspiracy stated in the preceding paragraph may now be applied to the contention of appellant that no conspiracy to commit embezzlement was proved, because there was no fiduciary relationship between the accused and the telephone company or the printing company. The fiduciary relationship existed between the company and its employee, and one may be guilty of embezzlement where he has aided or abetted the actual embezzlement although he, the person charged, does not occupy any fiduciary capacity. (*People* v. *Hess,* 104 Cal.App.2d 642, 672 [234 P.2d 65].) If one may be guilty of aiding and abetting in such case, surely one may be guilty of agreeing, with a confederate, to assist in the commission of a crime;

and if one may be guilty of attempt, as in the cases cited above, which requires steps beyond those essential to conspiracy, certainly one may be guilty of the latter crime, when he has allied himself with others for the purpose of committing it and an overt act has been performed. (*People* v. *Hess, supra,* pp. 670, 671, 672.)

Judgment affirmed. Appeal from order denying motion for new trial dismissed.

Draper, P. J., and Salsman, J., concurred.

A petition for a rehearing was denied April 16, 1963, and appellant's petition for a hearing by the Supreme Court was denied May 22, 1963.