[Civ. No. 51780. Second Dist., Div. Five. May 25, 1978.]

HAL W. WILLIAMS, JR., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

[Civ. No. 51786. Second Dist., Div. Five. May 25, 1978.]

DAVID CHEREN et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

[Civ. No. 51787. Second Dist., Div. Five. May 25, 1978.]

JOSEPH EDWARD WOOD, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Robert Fratianne, Herbert F. Blanck, Howard E. Beckler, Garber & Rudof, Albert C. Garber and Justin M. Groshan for Petitioners.

No appearance for Respondent.

John K. Van de Kamp, District Attorney, Harry B. Sondheim, George M. Palmer and Roderick W. Leonard, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**ASHBY, J.**—We issued an alternative writ of prohibition in the within matters at the direction of the Supreme Court. Petitioners are charged with one count of receiving and concealing stolen property (Pen. Code, § 496) and one count of "conspiracy to commit receiving and concealing stolen property" (Pen. Code, §§ 182, subd. 1, and 496). They seek a writ of prohibition, pursuant to Penal Code section 999a, directing respondent to dismiss the pending indictment.

The facts adduced before the grand jury were as follows: During the period under consideration, petitioners Cheren, Goldberg and Williams were attorneys. Petitioner Wood was a claims manager for the Hartford Insurance Group (hereinafter Hartford). In that capacity he had access to and knowledge of Hartford's investigatory file on a woman named June Walker who sustained catastrophic brain damage in the course of receiving medical treatment at UCLA.[1] The Walker file was considered confidential. It was compiled with the idea that it would eventually go to defense counsel in the event of a lawsuit against the Regents of the University of California. It contained information which counsel for the Regents and Hartford[2] considered to be both attorney work product and within the attorney-client privilege.

People's Exhibit 3 before the grand jury consisted of photocopies of documents comprising Hartford's June Walker file which were seized from the law offices of Cheren & Goldberg in February 1975, pursuant to a search warrant. When shown exhibit 3 at the grand jury proceeding, counsel for the Regents testified, "These are documents from my files as the attorney for the Regents of the University of California, and from the files of the underwriter, the Hartford Accident and Indemnity Company."

Mary Ellen Hoover was a secretary in the employ of Cheren & Goldberg. She testified under a grant of immunity. One day in September or October of 1972, Cheren came back from lunch very excited. He called Hoover into his office and closed the door. He told her that he had met with an insurance adjuster whom he knew from the days when Cheren himself had been an adjuster. He identified the man as Eddie Wood. Cheren further told Hoover that he was going to pick up the case of a lifetime, that it was a malpractice case, that it would probably take two or three more meetings with Wood to make the necessary arrangements and that it would cost Cheren a great deal of money.

Shortly thereafter Cheren had another meeting with the adjuster after which Cheren directed Hoover to withdraw $2,500 from his private savings account. When she brought the money to Cheren he told her it was to pay the first installment on the records he was buying in the malpractice case.

Two weeks to a month after this, Cheren brought People's Exhibit 3 into the office. It was covered by a sheet of white paper that had the word

[1]Hartford was the insurance carrier for UCLA.
[2]The same attorney represented both the Regents and Hartford.

"confidential" written across it diagonally. Cheren showed the documents to Hoover, explained that they were the records he had previously talked to her about, that they were very confidential, that he was not supposed to have them, that it was very important that no one know he had them, and that she was to tell no one about them. Cheren told Hoover that she would be the only secretary in the office who would work on the case, and that when the time for trial approached she would be assigned to work on it full time.

After obtaining People's Exhibit 3, Cheren and Goldberg, in Hoover's presence, discussed with each other how they would go about signing up the June Walker case. Eventually a capper whom they frequently employed was sent out to solicit Walker's daughters. A retainer agreement was signed by one of June Walker's daughters on January 10, 1973. A complaint on behalf of June Walker against the Regents and others was filed by Cheren & Goldberg on March 3, 1973.

After Cheren had worked on the case for about four months, he realized that he lacked the experience to handle it alone and Williams was brought in to help. Williams worked as a consultant on an hourly basis for about four to six months, after which he joined the firm of Cheren & Goldberg. Hoover observed People's Exhibit 3 in Williams' possession while he was preparing the Walker case for trial. He worked from the records contained in the exhibit to prepare for taking depositions of various doctors.[3] Hoover, in the course of working with Williams on the file, discussed with him the fact that the documents had come from Hartford and that they were confidential. As the time for trial neared, Cheren, Goldberg and Williams worked on the file all week and for three consecutive weekends discussing procedure and strategy. Hoover was present during these discussions. During this period, People's Exhibit 3 was kept on a bookshelf in Williams' office.

Dennis Tonsing was a law clerk in the office of Cheren & Goldberg until about May 3, 1973. He too testified under a grant of immunity. He reviewed People's Exhibit 3 at Cheren's request. Cheren told Tonsing that he had gotten the file from an insurance adjuster or investigator, that it was a confidential file, that it was confidential when Cheren got it and that it remained confidential in his office, that Tonsing was not to indicate where it came from and that it was to be kept separate from the rest of the Walker litigation file.

---

[3]People's Exhibit 3 contained a transcript of an interview with an anesthesiologist and synopses of investigative interviews with other doctors.

Trial commenced in the Walker case, but a settlement was reached prior to its conclusion. Under the terms of the settlement, Hartford invested $460,000 in a reversionary trust, the interest on which was to pay for lifetime custodial and medical care for June Walker; $10,000 was paid to Walker's two daughters for release of their future claims for wrongful death; $445,000 was paid to Cheren & Goldberg for attorney's fees and costs. Certain other miscellaneous disbursements were also made by Hartford. Payment to Cheren & Goldberg was by a check dated October 28, 1974, and deposited on October 30, 1974. Sometime thereafter Walker died and the trust principal reverted to Hartford.

Cheren stayed in touch with Wood throughout the processing of the Walker case and informed him of the progress of the case. At some point in time prior to January 1975, Wood moved to Texas. In January 1975, Cheren told Hoover to get him "something like $5000 in small bills" from the bank. She was uncertain as to the precise sum of money. Hoover jokingly inquired if he was being blackmailed and he said that he was. He asked her to address an envelope to Wood in Texas and designate a certain construction company as the return address. Cheren later told Hoover that he had mailed the cash in that envelope. About two weeks later, Cheren told Hoover that he had met with Wood and that he had made Wood sign a certain document promising not to acknowledge his association with them or to ask for more money.

Page 10 of People's Exhibit 1 was a document signed by Wood which stated: "I, Eddie Wood, have agreed to accept $7,000 (seven thousand and no/100) on above date from David Cheren, attorney, for information I allege provided by me regarding a civil action. I acknowledge he denies my allegation and has agreed to pay the above sum under duress threat of false accusations as a harassment on my part. I did not provide him such information and my accusations are false. [¶] This above charge may be used by him and this document may be introduced [sic] as evidence against me on behalf of Davis [sic] Cheren in any civil, criminal administrative proceeding against him." Wood's signature was authenticated by two witnesses.

Dennis McReynolds, an investigator with the district attorney's office, participated in the search of the offices of Cheren & Goldberg. The document designated page 10 of People's Exhibit 1 was on top of Cheren's desk. When McReynolds saw it, Cheren grabbed it and said that it was not important. McReynolds saw the name Eddie Wood and seized it. McReynolds had a conversation with Williams regarding People's

Exhibit 3. Williams denied having ever seen it. The indictment was returned on February 17, 1977.

With respect to the present proceeding, Cheren & Goldberg raise a single issue: they contend that the information contained in People's Exhibit 3, as distinguished from the paper on which it is printed, could not be the subject of theft and that the evidence is insufficient to establish that the pieces of paper comprising People's Exhibit 3 were ever the property of Hartford. Wood and Williams also raise this contention. In addition, Wood contends that he came into possession of exhibit 3 lawfully in the course of his employment and therefore did not steal it;[4] that a thief cannot receive from himself and is therefore not subject to prosecution under section 496 of the Penal Code;[5] that the information contained in People's Exhibit 3 would have been discoverable in an action by Walker and therefore could not have been the subject of theft; and that the prosecution was barred by the statute of limitations. (Pen. Code, § 800.)

Williams also contends that the statute of limitations has run on both counts. In addition, he contends that the evidence is insufficient to establish that he committed any acts of concealment with respect to People's Exhibit 3 or that he had knowledge that it had been stolen. Williams also argues that there was insufficient evidence to establish his participation in a conspiracy as there was no proof of agreement, of specific intent or of overt acts in furtherance thereof, and that he cannot, in any event, be charged with conspiracy to receive stolen property since an alleged conspirator is not chargeable with acts of coconspirators committed prior to his joining the alleged conspiracy.

We address ourselves first to the issue common to all of the petitioners, namely the contention that the evidence is insufficient to establish that the physical evidence, the papers comprising People's Exhibit 3, as distinguished from the information contained thereon, was ever the property of Hartford and the further argument that the information alone could not be the subject of theft. We note the oft-stated rules for reviewing the denial of a motion to dismiss pursuant to section 995 of the Penal Code. An indictment or information will not be set aside if there is a rational basis for concluding that an offense has

---

[4] We note a certain inconsistency between this argument and the previous contention that there is no showing that the papers comprising People's Exhibit 3 were ever the property of Hartford.

[5] Again, there are inconsistencies between this argument and the first two which Wood makes.

been committed and that the accused is guilty of it. It is not the task of this court, nor was it the task of respondent court, to substitute its judgment for that of the grand jury. Every legitimate inference that may be drawn from the evidence must be drawn in favor of the indictment. (*People* v. *Hall,* 3 Cal.3d 992, 996 [92 Cal.Rptr. 304, 479 P.2d 664].)

■ The original documents comprising the June Walker file and any photocopies thereof which were in the possession of Hartford, its attorneys, or its investigative agent, were property subject to theft. (*People* v. *Kunkin,* 9 Cal.3d 245 [107 Cal.Rptr. 184, 507 P.2d 1392, 57 A.L.R.3d 1199]; *People* v. *Parker,* 217 Cal.App.2d 422 [31 Cal.Rptr. 716]; *People* v. *Dolbeer,* 214 Cal.App.2d 619 [29 Cal.Rptr. 573].)[6] ■ *Dolbeer, supra,* raises doubts that mere information, as distinguished from the paper on which it is printed, can be the subject of theft. We need not resolve that question at this stage of the proceedings, however, as there were at least two theories on which the grand jury could have concluded that the papers themselves comprising exhibit 3 were taken either from Hartford or its attorney. As set forth in the statement of facts, counsel for Hartford, in his testimony before the grand jury, identified People's Exhibit 3 as documents from his files. He did not refer to them as photocopies of documents in his files. The grand jury could reasonably have concluded that counsel's testimony was intended literally, that the papers themselves had once resided in his files. Counsel further testified that he knew of no way in which exhibit 3 could have gotten into the hands of Cheren, Goldberg or Williams. This is irrelevant, however, to establishment of a prima facie case against them. Significantly, counsel was not asked whether there was any way that documents from his files could have found their way into Wood's hands.

The second theory on which the grand jury might have concluded that the physical evidence was once the property of Hartford requires the drawing of certain inferences, but they are entirely reasonable under the circumstances. There is ample evidence in the record that Cheren received exhibit 3 from Wood. Furthermore, not only is it clear that Wood had access to Hartford's Walker file, but many of the documents in exhibit 3 are addressed to him or directed to his attention as claims manager for Hartford. Given these facts, it is far more reasonable to infer that Wood either removed an existing set of documents from the Hartford

[6]In *People* v. *Kunkin,* 9 Cal.3d 245, the court assumed without deciding that any one of several copies of a list of undercover narcotics agents maintained in the Attorney General's office was property. In *People* v. *Parker,* 217 Cal.App.2d 422, and *People* v. *Dolbeer,* 214 Cal.App.2d 619, the court held that confidential telephone subscriber lists were tangible property subject to theft.

files, or photocopied a set on the Hartford premises, using Hartford's paper—behavior that would have been unlikely to arouse any suspicion against him given his responsibility for the file—and delivered them to Cheren, than it would be to infer that he took a set of Hartford documents, had them photocopied elsewhere—which might have roused suspicions—returned the first set to Hartford and delivered the second to Cheren. For one thing, there is nothing in the record to suggest that Wood followed this latter course. For another, the behavior of the parties with respect to the documents strongly suggests that they, rather than just the information contained in them, were stolen. Thus, while the attorney petitioners' financial interests explain their desire for secrecy concerning their possession of exhibit 3 prior to settlement of the Walker case, Cheren's willingness to pay blackmail to maintain that secret after the settlement was reached, strongly supports the inference that he knew the documents themselves were stolen. Likewise, Williams' denial that he had ever seen the documents suggests that he knew them to be stolen. The evidence is sufficient to permit the prosecution to go forward.

We turn next to the statute of limitations issue. ■ The statute of limitations in a criminal case is jurisdictional in nature. Unless the factual basis for the indictment includes some evidence that the prosecution is not barred, the indictment must be set aside. (*People* v. *Swinney,* 46 Cal.App.3d 332 [120 Cal.Rptr. 148].) Petitioners are charged with receiving *and concealing* stolen property and with conspiring to receive *and conceal* stolen property. The statute of limitations for each offense is three years. (Pen. Code, § 800.)

Respondent's finding with respect to the statute of limitations was as follows: "The crime of concealment of stolen property (P.C. 496) is a continuing crime from date of receipt until accomplishment of the main purpose of the conspiracy (P.C. 182), to wit, the successful settlement or collection of judgment of the wrongful death action based on medical malpractice. Settlement occurred upon receipt by defendants Cherin, [*sic*] Goldberg and Williams of the Hartford Insurance Company check for $455,000.00 on October 28, 1974. The conspiracy also ended on that date. The indictment was filed May 3, 1977, [*sic*] within the applicable three (3) year statute of limitations (P.C. 800)."[7] Respondent's ruling is confusing because it lumps the violations of sections 496 and 182 together. We prefer to treat them separately.

---

[7] The $455,000 payment included the $10,000 for Walker's daughters.

Receiving stolen property and concealing stolen property are separate offenses. ■ The crime of receiving stolen property congeals and is completed upon taking possession of the property with knowledge that it is stolen. (*People* v. *Feldman,* 171 Cal.App.2d 15, 23, 24 [339 P.2d 888].) Since the evidence establishes that Cheren received exhibit 3 in October 1972, that Williams came into possession of it in about May of 1973, and the indictment was not returned until February 1977, the statute of limitations bars prosecution of petitioners for receiving stolen property.

■ With respect to the charge of concealing stolen property, Wood and Williams argue that it is not a continuing offense and that the statute of limitations commenced to run against Cheren, Goldberg and Wood on the charge of concealing upon Cheren's receipt of exhibit 3, and that as to Williams it commenced to run in May 1973, when he first came into possession of exhibit 3 in the offices of Cheren & Goldberg. Williams relies upon *United States* v. *Mendoza,* 122 F.Supp. 367, which held that the federal retaining stolen property statute did not describe a continuing offense.

The California cases have taken a somewhat different approach. Courts which have considered the question have stated that they deemed it unnecessary to decide whether concealing stolen property is a continuing offense because they have found specific affirmative acts of concealment after initial receipt of the property and within the statutory period. (*People* v. *Swinney, supra,* 46 Cal.App.3d 332, 339; *People* v. *Foogert,* 85 Cal.App.2d 290, 296 [193 P.2d 14].) This is but another way of saying that concealment can be a continuing offense if the facts demonstrate that the continued concealment is purposeful. The record in the instant case discloses a pattern of active concealment up to the time the Walker case was settled.

But there is more to it than that. ■ Concealing stolen property is a distinct and separate offense from receiving stolen property precisely because receiving congeals and is completed upon taking possession with guilty knowledge, whereas concealing, by definition, continues. (*People* v. *Feldman, supra,* 171 Cal.App.2d 15.) ■ Petitioner Williams argues that concealing stolen property cannot be treated as a continuing offense for purposes of the statute of limitations unless "the alleged criminal violation requires an act, not a failure to act, that violates an affirmative duty." We find that the offense of concealing stolen property meets this standard. It consists of the act of intentionally secreting stolen property in

violation of the affirmative duty to return it—or at least to disclose its whereabouts—to its rightful owner.

■ One reason for including both receiving and concealing stolen property within the proscription of Penal Code section 496 is that it enables prosecution of one who innocently acquires property, but later learns that it was stolen and thereafter conceals it. (*People* v. *Johnson,* 223 Cal.App.2d 511 [35 Cal.Rptr. 883].) Such prosecution can be justified, however, only if the law recognizes a continuing affirmative duty to restore the property to its rightful owner.

We do not think that the case of the innocent acquirer fully explains including both receiving and concealing in Penal Code section 496. The typical "fence," whether professional or situational, acquires stolen property for purposes of resale. His personal obligation to return the property to its rightful owner terminates upon his divesting himself of possession. But as to one who receives stolen property for his own personal use, the duty to return it continues. It would offend our sense of common justice to think that if someone acquired a valuable piece of stolen property for his own use and managed to conceal it for three years, he could thereafter continue to do so, and to reap the benefits of using it, with impunity. We do not think that is the intent of the law. Rather, we find that one of the purposes of including both receiving and concealing in Penal Code section 496 is to enable prosecution for the continuing purposeful concealment of stolen property where prosecution for the receipt of that property is barred by the statute of limitations. ■ Such purposeful concealment continued in the instant case at least until October 28, 1974, and prosecution of petitioners for concealing stolen property therefore is not barred by the statute of limitations.

■ With respect to the conspiracy charge, the statute starts to run from the time of the last overt act committed in furtherance of the conspiracy. (*People* v. *Zamora,* 18 Cal.3d 538 [134 Cal.Rptr. 784, 557 P.2d 75].) We will assume for purposes of this decision that there were two separate conspiracies, one to receive and another to conceal exhibit 3. As to the former, the last overt act in furtherance of the conspiracy was transfer of exhibit 3 to Cheren in October 1972. Prosecution of this conspiracy is therefore barred by the statute of limitations.[8]

---

[8]This conclusion renders moot Williams' contention—which was well-taken—that a conspirator cannot be held liable for acts of coconspirators committed prior to his joining the conspiracy. (*People* v. *Feldman,* 171 Cal.App.2d 15, 21-22 [339 P.2d 888].)

As to the conspiracy to conceal stolen property, its central purpose was to enable Cheren, Goldberg and Williams to use it in their preparation of the Walker case. Since the settlement in Walker took place only after trial had commenced, and since the record establishes that the attorneys actively worked on the file until that time, overt acts of concealment in furtherance of the conspiracy are shown to have occurred at least up until October 28, 1974. The indictment handed down on February 17, 1977, was therefore, within the statutorily permitted limit insofar as it alleges a conspiracy to conceal stolen property.

Wood's next contention, that he came into possession of exhibit 3 lawfully in the course of his employment and therefore did not steal it, cannot withstand scrutiny. Wood was entrusted with the documents on a confidential basis. His expropriation of them for delivery to one with an interest adverse to his employer's constituted embezzlement. A prosecution for concealing stolen property or conspiring to do so may be predicated upon concealment of embezzled property. (*People* v. *Dolbeer, supra,* 214 Cal.App.2d 619.)

Wood's argument that he is not subject to prosecution because a thief cannot receive from himself is equally devoid of merit under the particular facts of this case. While in the typical case a thief is not subject to prosecution under Penal Code section 496, an exception to the rule exists where the thief and the receiver conspired in advance of the theft. (*People* v. *Lyons,* 50 Cal.2d 245, 274 [324 P.2d 556]; *People* v. *Raven,* 44 Cal.2d 523 [282 P.2d 866].) Logic requires a similar result where the conspiracy was not merely directed to theft of the property and its transfer to the receiver, but encompassed the continuing concealment and utilization of the property by the receiver. There is ample evidence in the record that that is precisely what happened here.

Finally, Wood argues that the information contained in exhibit 3 would have been discoverable in a civil action by Walker and that the exhibit itself therefore was not subject to theft. A similar argument was raised and rejected in *People* v. *Dolbeer, supra,* 214 Cal.App.2d 619, 623, wherein the court held that even though the telephone company lists which were involved in the prosecution were subject to disclosure pursuant to section 451 of Public Utilities Code, it was for the telephone company—or the Public Utilities Commission—to determine the time and manner of release "and not for appellant to do so by filching and for a price." Merely because some—or even all—of the information contained in exhibit 3 might at some future time have been lawfully obtained through discovery did not render lawful what otherwise constituted theft.

 Williams contends that there is insufficient evidence to establish that he participated in the conspiracy, that he knew that exhibit 3 had been stolen or that he committed any acts of concealment with respect to exhibit 3. As to the latter contention he argues that the evidence discloses that exhibit 3 was kept in plain sight on a bookshelf in his office prior to settlement of the Walker case and that it was found in the closed litigation file upon service of the search warrant, that these were the logical places to keep litigation files and that therefore no concealment took place. This argument is totally unconvincing. In the first place, two witnesses testified to the precautions which were taken within the offices of Cheren & Goldberg to preserve the secrecy surrounding their possession of exhibit 3. Secondly, it may sometimes happen that the best "hiding place" is the most obvious.[9] Property need not be hidden in a vault or buried in the ground in order to be concealed within the meaning of Penal Code section 496. All that is necessary is that its whereabouts be concealed from its rightful owner. Hoover's testimony that Williams worked actively with exhibit 3, that she discussed with him the facts that exhibit 3 was highly confidential and that it had come from Hartford, and Williams' denial of ever having seen the documents after their seizure pursuant to the search warrant, provide sufficient evidence that he participated in the conspiracy with the requisite intent, that he committed overt acts of concealment in further-ance thereof, and that he knew the documents were stolen.

The alternative writ heretofore issued is discharged. Respondent is directed to strike all reference to "receiving" stolen property in counts I and II of the indictment. The peremptory writ is otherwise denied.

Stephens, Acting P. J., and Hastings, J., concurred.

A petition for a rehearing was denied June 22, 1978, and the opinion was modified on June 14, 1978, to read as printed above. Petitioners' applications for a hearing by the Supreme Court were denied July 20, 1978.

---

[9]See e.g., Poe, Edgar A., The Purloined Letter.