Filed 12/24/15

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| THE PEOPLE, | B261625 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA095346) |
| v. | |
| TERRELL THOMPSON, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of Los Angeles County, Wade Olsen, Comissioner.  Reversed and remanded.

Carlos Ramirez for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Mary Sanchez and Theresa A. Patterson, Deputy Attorneys General for Plaintiff and Respondent.

_____

1

Terrell Thompson appeals the denial of his resentencing petition pursuant to Penal Code section 1170.18.[1] He contends that he is entitled to resentencing because his grand theft conviction for violating section 484e, subdivision (d) has now been reclassified as a misdemeanor under section 490.2, subdivision (a) (added by Proposition 47). We agree and reverse.

## FACTUAL AND PROCEDURAL SUMMARY

On August 6, 2011, after using her debit card to pay for gas at a Chevron station, Miriam Golf dropped it on the ground.[2] Thompson was observed picking up the card. Thereafter, Thompson used the card at gas stations on three separate occasions for a total of $210.28. He was charged with two counts of grand theft, under section 484e, subdivision (d)[3] and two counts of second degree commercial burglary, under section 459.[4] On September 1, 2011, Thompson entered a nolo contendere plea to one count of grand theft pursuant to section 484e, subdivision (d) and was sentenced to six years in state prison.

---

[1] All further statutory references are to the Penal Code.

[2] Both parties reference the probation report for these facts.

[3] Section 484e, subdivision (d) provides that "[e]very person who acquires or retains possession of access card account information with respect to an access card validly issued to another person, without the cardholder's or issuer's consent, with the intent to use it fraudulently, is guilty of grand theft."

[4] Some section 459 offenses have been reclassified as misdemeanors under section 459.5, which was added to the Penal Code by Proposition 47. Section 459.5, subdivision (a) provides: "Notwithstanding Section 459, shoplifting is defined as entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950)."

2

On December 11, 2014, Thompson petitioned to recall his sentence and for resentencing pursuant to section 1170.18. In opposition, the People argued that Thompson's underlying felony rendered him ineligible for relief. The court denied the petition, concluding that Thompson's conviction for 484e, subdivision (d) does not qualify for resentencing under section 1170.18. This timely appeal followed.

## DISCUSSION

### I

In November 2014, California voters enacted Proposition 47, which reclassified certain drug and theft-related offenses as misdemeanors. To effectuate these changes, Proposition 47 added several sections to the Penal Code, including section 490.2. Section 490.2, subdivision (a), provides that "[n]otwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor," unless one of the prior disqualifying convictions enumerated in the code applies.

Proposition 47 also "created a new resentencing provision: section 1170.18. Under section 1170.18, a person 'currently serving' a felony sentence for an offense that is now a misdemeanor under Proposition 47, may petition for a recall of that sentence and request resentencing in accordance with the statutes that were added or amended by Proposition 47. [Citation.] A person who satisfies the criteria in section 1170.18 shall have his or her sentence recalled and be 'resentenced to a misdemeanor . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' (§ 1170.18, subd. (b).)" (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1092; *People v. Lynall* (2015) 233 Cal.App.4th 1102, 1108-1109.)

The issue before us is twofold. First, does section 490.2, subdivision (a) apply to a

violation of section 484e, subdivision (d)?  Second, if it applies, does the value of the access card account information exceed $950?  We begin by recognizing that Proposition 47 case law is developing and there is a split of authority on these issues.

In interpreting a voter initiative, we apply the same principles governing statutory interpretation.  (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 901.)  "Our first task is to examine the language of the statute enacted as an initiative, giving the words their usual, ordinary meaning.  [Citation.]" (*People v. Canty* (2004) 32 Cal.4th 1266, 1276.)  "'The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme [in light of the electorate's intent].  [Citation.]'" (*Robert L., supra*, at p. 911.)  If the initiative measure's language is ambiguous, "we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.  [Citations.]" (*People v. Birkett* (1999) 21 Cal.4th 226, 243.)

The plain language of section 490.2, subdivision (a) unequivocally expresses an intention that Proposition 47 apply to all Penal Code sections defining "grand theft."  In its introductory clause, section 490.2, subdivision (a) provides "[n]otwithstanding Section 487 *or any other provision of law defining grand theft*," obtaining any property by theft where the value does not exceed $950 shall be punished as a misdemeanor.  (Italics added.)  In enacting section 484e, the Legislature defined the acquisition and retention of access card account information under subdivision (d) of that statute as "grand theft." (See *People v. Molina* (2004) 120 Cal.App.4th 507, 519 ["Penal Code section 484e, subdivision (d) makes it grand theft to acquire account information with respect to an access card validly issued to another with the intent to defraud"].)  If there were any ambiguity, it is resolved by the text of the proposition itself.  Section 15 of Proposition 47 provides the "act shall be broadly construed to accomplish its purposes" and section 18 provides that it shall be "liberally construed to effectuate its purposes."  (Ballot Pamp., Gen. Elec. (Nov. 4, 2014) text of Prop. 47, §§ 15, 18, p. 74; see also *People v. Romanowski* (2015) 242 Cal.App.4th 151, 159 (*Romanowski*).)  One of the purposes of

4

Proposition 47 was to "[r]equire misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft." (Ballot Pamp., Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 3, p. 70.) Accordingly, section 490.2, subdivision (a) reclassifies all grand theft provisions, including section 484e, subdivision (d) offenses as petty theft, unless the value of the property taken exceeds $950.

Two recent cases have concluded that section 484e, subdivision (d) does not fall within section 490.2, subdivision (a). In *People v. Cuen* (2015) 241 Cal.App.4th 1227, 1231, the court reasoned that section 490.2, subdivision (a) only applies to thefts of "money, labor, real or personal property" and declined to extend the definition of personal property to include access card account information. The court differentiated the type of theft in section 484e, subdivision (d) from the type of theft defined in section 490.2, subdivision (a), explaining that "[t]heft of intangible access card account information presents a qualitatively different personal violation than theft of more tangible items." (*People v. Cuen*, at p. 1231.) The court in *People v. Cuen* reasoned that a specific statutory provision controls over a more general provision, concluding section 484e, subdivision (d) controls because it is a specific statutory provision, whereas 490.2, subdivision (a) is a general provision. (*People v. Cuen*, at p. 1231.)

We disagree. Access cards and access card account information are personal property. Section 7 provides definitions for words and phrases used in the Penal Code and defines "personal property" as "includ[ing] money, goods, chattels, things in action, and evidences of debt." (§ 7, subd. 12.) This definition has been broadly interpreted. (See *People v. Dolbeer* (1963) 214 Cal.App.2d 619, 623 [holding confidential lists of telephone subscribers came within definition of personal property under section 7, subdivision 12 because they constituted tangible "'goods'" with value].) Additionally, Black's Law Dictionary defines "personal property" as "[a]ny moveable or *intangible* thing that is subject to ownership and not classified as real property." (Black's Law Dict. (9th ed. 2009) p. 1337, col. 1, italics added.)

5

Here, appellant took a tangible item, a debit card containing access card account information. (See *Emslie v. State Bar* (1974) 11 Cal.3d 210, 224; *People v. Ledesma* (1987) 43 Cal.3d 171, 230 (conc. opn. of Mosk, J.) [referring to credit cards as "personal property"].) The debit card was a tangible item of personal property belonging to the victim, Golf. Moreover, under the Black's Law Dictionary definition, even intangible access card account information, without the access card, would fall within the definition of personal property.

We also decline to adopt the interpretation in *People v. Cuen*, that a specific grand theft Penal Code provision controls over section 490.2, subdivision (a). The rule is that a "'statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering the general spectrum . . . *unless* the later statute expressly contradicts the original act or unless that construction is absolutely necessary in order that all of the words of the later statute have any meaning at all.' [Citations.]" (*Hughes Electronics Corp. v. Citibank Delaware* (2004) 120 Cal.App.4th 251, 268, italics added.) Each of these exceptions applies in this case. The later statute, section 490.2, explicitly sweeps all earlier grand theft provisions into its application, reclassifying them as petty theft unless the value of the property taken exceeds $950. And the plain meaning of the statutory language, "[n]otwithstanding Section 487 or any other provision of law defining grand theft," (§ 490.2, subd. (a)) would be meaningless if it did not apply to all specific grand theft provisions. Therefore, we cannot construe section 484e, subdivision (d) as a specific provision that controls over section 490.2, subdivision (a). (See also Ballot Pamp., Gen. Elec. (Nov. 4, 2014) analysis by Legislative Analyst, p. 35 [purpose of Proposition 47 is to reclassify nonserious and nonviolent offenses as misdemeanors].)

In *People v. Grayson* (2015) 241 Cal.App.4th 454, the court relied on three main reasons for excluding section 484e, subdivision (d) from the application of Proposition 47. First, the court held that section 490.2, subdivision (a) only applies to grand theft where the loss to the victim can be quantified. (*Grayson*, at pp. 458-459.) In reaching

6

this conclusion, the court explained that "[a]lthough section 490.2[, subdivision (a)] purports to apply to all provisions defining grand theft, it mentions only section 487. Sections 490.2[, subdivision (a)] and 487, subdivision (a) are similar in that they refer specifically to the value of the 'money, labor, or real or personal property' obtained by the theft.  [Citations.]  In other words, both statutes presume a loss to the victim that can be quantified to assess whether the value of the money, labor or property taken exceeds the $950 threshold.  Section 484e[, subdivision] (d) does not contemplate such a loss." (*Ibid.*)

It is for the Legislature to decide which crimes are grand theft, and it has done so in section 484e, subdivision (d), as it has in other related provisions.  Section 490.2, subdivision (a) explicitly states, "[n]otwithstanding Section 487 *or any other provision of law defining grand theft*."  (Italics added.)  The plain meaning of this introductory clause is that section 490.2, subdivision (a) was intended to apply to all grand theft provisions and not just section 487 offenses.  The court's attempt to distinguish section 487 by reasoning that the language of section 487, subdivision (a) is similar to the language in section 490.2, subdivision (a) is unpersuasive.  Section 490.2, subdivision (a) references section 487 generally and there are three subdivisions within section 487 where the offense is classified as grand theft without any reference to the value of the property taken:  subdivision (c) defines grand theft as the taking of property from the person of another; subdivision (d)(1) defines grand theft as the taking of property when the property is an automobile; and subdivision (d)(2) defines grand theft as the taking of property when the property is a firearm.  Additionally, there are five other grand theft provisions that are value based but not enumerated under section 490.2, subdivision (a) (§§ 487b, 487e, 487h, 487i, and 487j).  And, if section 490.2, subdivision (a) were limited to grand theft offenses already defined by the value of the property taken, it would duplicate the many statutes already drawing a line between grand and petty theft based on the value of the property taken.  (*People v. Romanowski*, *supra*, 242

7

Cal.App.4th at p. 157.)

Looking beyond the initiative's plain language, its history also supports the conclusion that Proposition 47 was intended to apply to all grand theft statutes, not only to those that were specifically value based. (See *People v. Birkett, supra,* 21 Cal.4th at p. 243 [we look to analyses in official ballot pamphlet to ascertain voters' intent].) In the official ballot pamphlet, the Legislative Analyst explained: "Under current law, theft of property worth $950 or less is often charged as petty theft, which is a misdemeanor or an infraction. However, such crimes can sometimes be charged as grand theft, which is generally a wobbler. For example, a wobbler charge can occur if the crime involves the theft of certain property (such as cars) or if the offender has previously committed certain theft-related crimes. This measure would limit when theft of property of $950 or less can be charged as grand theft. Specifically, such crimes would no longer be charged as grand theft *solely because of the type of property involved.*" (Ballot Pamp., Gen. Elec. (Nov. 4, 2014) analysis by Legislative Analyst, p. 35, italics added.)

Second, the court in *People v. Grayson, supra,* 241 Cal.App.4th at pages 458-459, found that possession of access card account information with fraudulent intent under section 484e, subdivision (d) was distinguishable from other theft crimes because of the significant risk of identity theft and loss to the victim. The court explained that there was no authority to suggest the electorate intended to "undercut" the broad consumer-protection purpose behind section 484e, subdivision (d) by valuing such a risk at $950 or less. (*People v. Grayson*, at p. 460.)

If the intention were to exclude offenses under section 484e, subdivision (d), section 490.2, subdivision (a) could have been written so its introductory language was more narrow or included specified exceptions. (See *Romanowski, supra,* 242 Cal.App.4th at pp. 156-157.) Moreover, there is evidence that Proposition 47 contemplated the risk of identity theft crimes. For example, Proposition 47 also amended section 473, check forgery, making it a misdemeanor where the value of the check does

8

not exceed $950. Checks contain the same type of account information that is found on an access card, as well as the owner's address. Thus, a person in possession of another person's check is likely to have access to the same identifying information as a person who acquires and retains access card account information. Yet, section 473 explicitly states that the changes effectuated by Proposition 47 apply unless the defendant is convicted both of forgery and of identity theft, as defined in section 530.5. The check forgery provision indicates that the risk of identity theft is not sufficient to block Proposition 47 relief; rather, it is only when a defendant has actually been convicted of identity theft that check forgery would not be reclassified as a misdemeanor. Furthermore, the identity theft provisions under section 530.5 can be charged as either a misdemeanor or a felony, so the intent to protect consumers against identity theft crimes is not synonymous with a felony charge.

Third, the court in *People v. Grayson, supra*, 241 Cal.App.4th at pages 459-460, and respondent note that section 484e, subdivision (d) is not a pure theft crime because the essence of the violation is the "acquisition or retention" of access card information with fraudulent intent and section 490.2, subdivision (a) does not incorporate the acquisition or retention language, nor does it refer specifically to section 484e, subdivision (d) or any statute regarding access cards.

Finally, as we have discussed, the Legislature defined the acquisition and retention of access card account information with an intent to defraud as "grand theft." (§ 484e, subd. (d).) Thus, regardless of the "essence" of section 484e, subdivision (d), it defines a grand theft offense, and because section 490.2, subdivision (a) incorporates all "grand theft" provisions, without reference to specific statutes, it applies to section 484e, subdivision (d). (See *People v. Hoffman* (2015) 241 Cal.App.4th 1304, 1311 ["The trial court may not refuse to reduce a defendant's sentence based on the court's notion of the statute's 'spirit'"].)

9

We next address whether the value of access card account information exceeds $950. Appellant argues that access card account information has slight value and minimal intrinsic value in that it can be used as a negotiable instrument. Respondent does not address the issue. *Romanowski, supra*, 242 Cal.App.4th at pp. 157-158, suggests the "value" may be based on the value of the access account card information if it were fenced on the black market.

We decline to follow the black market determination posed in *Romanowski* because of the evidentiary impracticability. The value of the access card itself is slight, only the intrinsic value of the plastic. (See *People v. Caridis* (1915) 29 Cal.App. 166, 167-168 [winning lottery ticket in illegal lottery, as piece of paper, possessed slight intrinsic value, such that wrongful taking of it would have been petit larceny].) The account information also has minimal intrinsic value, in that it is only valuable if used. (See *United States Rubber Co. v. Union Bank & Trust Co.* (1961) 194 Cal.App.2d 703, 708-709 [finding value of forged check is "a nullity" because it is merely "an order to pay . . . and is of no value unless accepted"]; see also *People v. Cuellar* (2008) 165 Cal.App.4th 833, 838-839 [a "fictitious check, like the illegal lottery ticket in *Caridis*, had slight intrinsic value by virtue of the paper it was printed on"].)

An independent Penal Code provision, section 484g, prohibits the use of access card or access card account information with an intent to defraud and punishes such use as grand theft if the value of all money, goods, services, and other things of value acquired through use of the card or account information exceeds $950 in any six-month consecutive period. We note the apparent dissonance between sections 484e, subdivision (d) and 484g. Acquiring and retaining access card account information with an intent to defraud, before the passage of Proposition 47, was punished as grand theft, without regard to value, but using access card account information was punished as a misdemeanor, unless the value exceeded $950. In this case, had appellant been charged

10

under section 484g, he would have been convicted of a misdemeanor because the value of the goods he obtained with the access card did not exceed $950.

We find that the value of access card account information is necessarily less than $950 because the intrinsic value of acquiring and retaining access card account information is minimal, unless used. This finding is consistent with the objectives of Proposition 47 and reconciles any dissonance between sections 484e, subdivision (d) and 484g. Furthermore, an individual who takes an access card or access card account information and uses it to purchase property that exceeds $950 can still be punished for grand theft under section 484g.

We conclude appellant is eligible for resentencing under section 1170.18 because, under Proposition 47, his conviction has been reclassified as a misdemeanor. Remand is required because the trial court did not reach the issue of whether resentencing appellant would pose an unreasonable risk of danger pursuant to section 1170.18, subdivision (b).

**DISPOSITION**

The order is reversed and the case remanded for further proceedings consistent with this opinion.


**CERTIFIED FOR PUBLICATION.**



EPSTEIN, P. J.

I concur:


COLLINS, J.

11

WILLHITE, J.

I respectfully dissent.

In considering whether Penal Code section 490.2, subdivision (a)[1] reduces the grand theft defined in section 484e, subdivision (d) to a misdemeanor, my colleagues and I do not write on a clean slate. Four recent decisions have considered the issue. Three have concluded that section 490.2, subdivision (a) does not apply to section 484e, subdivision (d). (*People v. Cuen* (2015) 241 Cal.App.4th 1227, *People v. Grayson* (2015) 241 Cal.App.4th 454, and *People v. King* (Dec. 2, 2015, B261784) __ Cal. App.4th ___. One has concluded that it does. (*People v. Romanowski* (2015) 242 Cal.App.4th 151.) In this case, my colleagues align themselves largely (though not entirely) with *Romanowski*. Disagreeing with *Cuen, Grayson* and *King*, and agreeing with *Romanowski*, my colleagues hold, in substance, that the plain language of section 490.2, subdivision (a) compels the conclusion that it covers section 484e, subdivision (d). Disagreeing in part with *Romanowski*, they also hold that the value of access card account information is necessarily less than $950 (the threshold under section 490.2, subd. (a) for felony treatment of covered theft offenses), and that *Romanowski's* suggestion that the black market price of the information might be used to value it is impractical.

In light of the proliferation of decisions on this issue, there is little for this dissent to add. While I agree with the holdings of *Cuen*, *Grayson* and *King*, I only briefly supplement their reasoning to discuss one point regarding the plain meaning of section 490.2, subdivision (a), that has perhaps not been fully considered in those decisions or by my colleagues here.

---

[1]All undesignated section references are to the Penal Code.

1

Section 490.2, subdivision (a) provides: "Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor . . . ."[2] It is true that section 484e, subdivision (d) defines a form of grand theft: "Every person who acquires or retains possession of access card account information with respect to an access card validly issued to another person, without the cardholder's or issuer's consent, with the intent to use it fraudulently, is guilty of grand theft." Thus, to the extent section 490.2, subdivision (a) declares that it applies "[n]otwithstanding Section 487 or any other provision of law defining grand theft," section 484e, subdivision (d) seems at first blush a neat fit. But on closer examination, rough edges emerge.

Though section 490.2, subdivision (a) generally declares that it applies regardless of other statutes defining grand theft, it also reduces grand theft to petty theft only if the crime involves "obtaining any property by theft," and "the value of the . . . property taken" is $950 or less. By its plain meaning, this language presupposes that the grand theft to be reduced is in one in which the offender has, in some form, committed a taking of property by theft. That is the most reasonable interpretation of the provision's

_____

[2]It provides in full: "Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor, except that such person may instead be punished pursuant to subdivision (h) of Section 1170 if that person has one or more prior convictions for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290."

2

reference to the offender's "obtaining any property by theft" and its reference to property that has been "taken."[3]

But this presupposition creates an anomaly when applied to section 484e, subdivision (d), because while one can violate that statute by a taking, the statute does not require it. Rather, the statute defines a hybrid form of grand theft – one that can be committed when a person "acquires . . . access card account information" with fraudulent intent (conduct equivalent to a taking by theft),[4] or, in the alternative, when a person merely "retains possession of" such information with fraudulent intent.[5] This latter method of violating section 484e, subdivision (d) – retaining possession of access card account information -- does not require proof that the offender has, in the words of section 490.2, subdivision (a), "obtain[ed] . . . property [here, access card account information] by theft." Rather, it requires proof only that the offender has *retained possession of* access card account information, regardless of whether it was obtained by theft.

This is, perhaps, a fine distinction. But such is the nature of attempting to divine the intent of the voters from the entirety of the relevant language of section 490.2, subdivision (a). And the plain meaning of that language as applied

---

[3]The common meaning of "obtain" is "to gain or attain usually by planned action or effort." (http://www.merriam-webster.com/dictionary/obtain.) "Take," of which "taken" is the past participle, commonly means "to get into one's hands or into one's possession, power, or control," or "to seize or capture physically." (http://www.merriam-webster.com/dictionary/take.)

[4] The common meaning of "acquire" is "to get as one's own," or "to come into possession or control of often by unspecified means." (http://www.merriam-webster.com/dictionary/acquire.)

[5] The common meaning of "retain" is "to keep in possession or use." (http://www.merriam-webster.com/dictionary/retain.)

3

to section 484d, subdivision (e) creates an anomaly:  an offender who is proven to have acquired access card account information with fraudulent intent is guilty of a misdemeanor (assuming the value of the information is information is $950 or less), but the offender who is proven to have only retained possession of such information with fraudulent intent, regardless of how or when it was obtained, and regardless of the value, is guilty of a felony.  Obviously, this dichotomy could not have been the intent of Proposition 47.

I would resolve this dichotomy by holding, as did the courts in *Cuen, Grayson* and *King,* that neither the language nor the intent of section 490.2 subdivision (a) applies to section 484e, subdivision (d).

WILLHITE, J.

4